## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JONATHAN CODY, II, | : | Civil No. 1:24-CV-927 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MARC HOWELL, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

Before the court is the motion to dismiss the complaint, filed by Defendants

Marc S. Howell, Stephen Marte, Even McKenna,[1] Austin Snyder, Brandon

Braughler, City of Harrisburg Police Department,[2] and the City of Harrisburg,

(collectively "Defendants") seeking to dismiss the complaint filed by Plaintiff

Jonathan Cody, II ("Cody") as barred by the statute of limitations, subject to the

defense of qualified immunity, and failing to state a claim upon which relief can be

granted.  (Doc. 8.)  The complaint alleges constitutional violations for use of

---

[1] Defendant McKenna's name is spelled "Even" in the captions of the parties' papers and as "Evan" in the body of Defendants' motion and brief in support.  The court will use the spelling included in the case caption.

[2] The City of Harrisburg Police Department is not a Defendant in the action before this court. (*See* Doc. 1-3.)  However, the court includes the City of Harrisburg Police Department for completeness because Defendants include this entity in the text of its motion and because City of Harrisburg Police Department was named as a Defendant in Plaintiff's praecipe for writ of summons.  (Docs. 8, p. 2; 8-2.)  The court reiterates, the City of Harrisburg Police Department is not named in the complaint.

excessive force and conspiracy to violate constitutional rights against Defendants. For the reasons that follow, the motion will be granted in part and denied in part.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

According to Plaintiff's allegations, the instant claims arise from an incident that occurred on February 6, 2022, when Defendant Marc Howell ("Howell") "operated a motor vehicle while on duty for the Harrisburg Police Department and unexpectedly turned into a pedestrian crosswalk which was being used by Plaintiff; this caused Plaintiff to strike the vehicle." (Doc. 1-3, ¶ 9.) Cody explained how Defendant Howell "had caused [him] to physically strike the police car to prevent himself from being run over in a well marked and legally protected pedestrian lane." (*Id.* ¶ 10.) Defendant Howell then ordered Cody to remain on the sidewalk, and Cody complied with this order. (*Id.* ¶ 11.) A second officer arrived and began speaking with Cody. (*Id.* ¶ 12.) At this time, "[e]veryone appeared relatively cordial . . . and the Plaintiff waited for a supervisor to arrive to take his complaint about Defendant's Howell's driving." (*Id.*)

More officers arrived and began discussing the incident with Defendant Howell. (*Id.* ¶ 13.) After the officers began discussing the incident, "Defendant Howell began falsely claiming that Plaintiff had deliberately hit his police car with something as it just happened to pass by Plaintiff on the street." (*Id.* ¶ 14.) At this point, "Defendants seemed to form an alliance and discuss the incident[.]" (*Id.* ¶

16.)  Defendants began "openly mock[ing] Plaintiff's perceived sexual orientation by, among other things, overly emphasizing and repeating how Plaintiff enunciated certain words in an exaggerated and stereotypically 'gay' manner[.]" (*Id.*). Defendants also "made much of referring to Plaintiff's carry case as a female type of 'purse,' and they made a point acting sarcastically amongst each other about whether Plaintiff was a 'he' and 'she.'" (*Id.*)

Cody then "stated he was blameless and insisted the police take his complaint." (*Id.* ¶ 17.)  Defendant Howell then lost "his composure and shouted for the other officers to arrest the Plaintiff." (*Id.*)  Cody's "arrest was ordered . . . and agreed to by the other officers as part of a conspiracy to stifle Plaintiff's complaint about Defendant Howell's driving and conceal that he was a complainant since a police supervisor was en route to investigate the incident." (*Id.* ¶ 18.)  Then, "[i]n furtherance of this conspiracy, [Defendants] essentially pile on piled-on [sic] the Plaintiff with great physical force and controlled violence[,]" including striking, kneeing, elbowing and slamming Cody into a rock wall, and "inflict[ing] pain by forcing his hands/arms (which were already handcuffed behind his back) to be pushed far past the normal range of motion towards his head so that it caused excruciating pain and made it impossible to walk normally." (*Id.* ¶¶ 19, 20.)  Cody's "feet were shackled with steel leg irons and he was practically dragged to a police car and placed in the back of it." (*Id.* ¶ 20.)

Once in the police car, "Defendants cooperated with one another to deliberately aim and spray a chemical agent/irritant directly into the Plaintiff's eyes, from too close of a distance, so that Plaintiff would be too incapacitated to continue complaining about Defendant Howell's driving into the cross-walk, etc, once a supervisor arrived on scene." (*Id.* ¶ 22.) Another officer arrived on the scene and attempted to administer first aid "because Plaintiff was begging for help with his eyes. However, the said officer was prevented by the named Defendants from reaching the Plaintiff and/or administering first aid." (*Id.* ¶ 23.)

Cody was then "unlawfully transported against his will and confined in a jail cell until the following morning despite his repeated requests for first aid and medical care." (*Id.* ¶ 24.) The next day, Cody was taken out of jail in a wheelchair and "abandoned." (*Id.* ¶¶ 25, 26.) After leaving the jail, Cody called an ambulance and was "transported to a hospital where he received treatment for injuries inflicted by the named Defendants which included but were not limited to conjunctivitis, corneal abrasion and arthralgia." (*Id.* ¶ 27.)

Cody alleges "upon information and belief" that from his arrest until June 25, 2023, when charges against him were dismissed, that Defendants "willfully combined, conspired and agreed with each other and others to threaten, intimidate and injure the Plaintiff in order to prevent him from freely exercising and enjoying his rights and privileges[.]" (*Id.* ¶ 28.) On a date not mentioned in the complaint,

"Defendant Howell filed various criminal charges against Plaintiff which had no basis in fact or law under the circumstances and those charges were later dismissed by the Dauphin County Court of Common Pleas."  (*Id.* ¶ 29.)

Cody alleges one count of negligent operation of a motor vehicle against Defendant Howell and the City of Harrisburg.  (*Id.* ¶¶ 33–41.)  He alleges one count of unreasonable and excessive force under 42 U.S.C. § 1983 against the individual officer Defendants.  (*Id.* ¶¶ 42– 47.)  He alleges one count of conspiracy–unreasonable and excessive force under 42 U.S.C. §§ 1983 and 1985 against the individual officer Defendants.  (*Id.* ¶¶ 48–51.)  Finally, Cody alleges one count of assault and one count of battery under Pennsylvania state law against the individual officer Defendants.  (*Id.* ¶¶ 52–58.)

Cody commenced this action in the Dauphin County Court of Common Pleas by filing a praecipe for writ of summons on January 8, 2024.  (Doc. 9, p. 3.)[3] The writ of summons named Marc Howell and City of Harrisburg Police Department as Defendants.  (*Id.* at 16.)  According to the Dauphin County Court of Common Pleas docket, the writ of summons was served on Defendant Howell and the Police Department on January 10, 2024.  (*Id.* at 3, 4.)  Defendants attempted to remove the case to this court on February 21, 2024, however, the court remanded the case to the Dauphin County Court of Common Pleas as prematurely removed

---

[3] For ease of reference, the court uses the page number contained in the CM/ECF header.

because no complaint had yet been filed.  (*Id.* at 46, 47.)  On May 6, 2024, Cody

filed the instant complaint, naming Marc S. Howell, Stephen Marte, Even

McKenna, Austin Snyder, Brandon Braughler, and the City of Harrisburg as

Defendants.  (Doc. 1-3.)  The complaint was served on all Defendants on May 10,

2024.  (Doc. 9, p. 69.)  On June 5, 2024, Defendants removed the action to this

court.  (Doc. 1.)

On June 12, 2024, Defendants filed the instant motion to dismiss.  (Doc. 8.)

Defendants filed a brief in support on June 26, 2024.  (Doc. 10.)  On July 1, 2024,

Plaintiff filed a response in opposition to the motion to dismiss.  (Doc. 13.)[4]

Defendants filed a reply brief on July 15, 2024.  (Doc. 14.)  Thus, this motion is

ripe and ready for disposition.

### JURISDICTION AND VENUE

This court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 because

Plaintiff brings claims arising under 42 U.S.C. § 1983.  This court also has

supplemental jurisdiction over the state law tort claims under 28 U.S.C. § 1367

---

[4] The court notes that this response is not compliant with Local Rule 7.6 which provides that
"[a]ny party opposing any motion, other than a motion for summary judgment, shall file a *brief*
in opposition within fourteen (14) days after service of the movant's brief."  Middle District of
Pennsylvania Local Rule 7.6 (emphasis added.)  The instant "response" responds paragraph by
paragraph "admitting" or "denying" the statements in Defendants' motion.  (Doc. 8.)  Although
not styled as a brief, Defendants do not argue the court should not consider the "response" for
failure to comply with Local Rules.  Thus, the court will construe the "response" as a brief in
opposition.  The court further notes that the CM/ECF docket lists the response as an "affidavit."
(Doc. 13.)  As there is no indication that Plaintiff's counsel drafted the "response" under oath or
affirmation, this labelling is inaccurate.

because they are related to the federal claims.  Venue is appropriate under 28

U.S.C. § 1381 because all actions or omissions alleged in the complaint occurred

in the Middle District of Pennsylvania.

**STANDARD OF REVIEW**

In order "[t]o survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.

v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting

*Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to

survive a motion to dismiss.  *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir.

2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint

survives a motion to dismiss, a court identifies "the elements a plaintiff must plead

to state a claim for relief," disregards the allegations "that are no more than

conclusions and thus not entitled to the assumption of truth," and determines

whether the remaining factual allegations "plausibly give rise to an entitlement to

relief."  *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).  Additionally, under

Third Circuit precedent a complaint will only be dismissed "for failure to state a

claim on statute of limitations grounds…when the statute of limitations defense is

apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017).

## DISCUSSION

Defendants raise three arguments challenging Cody's complaint. First, Defendants argue that Cody's Claims against Defendants Marte, McKenna, Snyder, Braughler, and the City of Harrisburg are time barred because these Defendants were "not named or served under the Writ of Summons after Plaintiff's statute of limitations ha[d] expired." (Doc. 10, p. 5.) Second, Defendants argue the individual officer Defendants are entitled to qualified immunity. (*Id.* at 7.) Third and finally, Defendants argue that the complaint fails to state a claim for negligent operation of a motor vehicle and conspiracy. (*Id.* at 8–12.) Specifically, Defendants argue that Cody's negligent operation of a motor vehicle claim lacks sufficient pleading regarding the cause element and Cody's conspiracy claim is conclusory. (*Id.*) Defendants ask the court to deny leave to amend. (*Id.* at 12.)

Cody responds that the statute of limitations period did not begin to run until June 2023, when the charges against him were dismissed. (Doc. 13, p. 6.) Thus, the complaint, filed on May 6, 2024, is timely. (*Id.*) Cody also argues the officers are not entitled to qualified immunity because the complaint "avers intentional violations of so called 'bright lines' being crossed by the officer[.]" (*Id.* at 7.) Finally, Cody argues that the complaint adequately pleads both negligent operation

of a motor vehicle and conspiracy.  (*Id.* at 9–11.)  The court will address each argument in turn.

## A. Statute of Limitations

Defendants argue that the claims against Defendants Marte, McKenna, Snyder, Braughler, and City of Harrisburg should be dismissed as filed outside the statute of limitations because the writ of summons did not name them as defendants.  (Doc. 10, p. 5.)  According to Defendants, the statute of limitations for this action is two years, and it began to run as of February 7, 2022, at the conclusion of the underlying incident.  (*Id.* at 5-6.)  Therefore, the complaint, filed on May 6, 2024, was not timely.  (*Id.* at 6.)  Defendants also argue that the service of the writ of summons on the Harrisburg City Police Department cannot be imputed to the City of Harrisburg because a police department is not a proper party in a § 1983 action.  (*Id.* at 6.)

Cody's argument in response is:

[T]he Complaint specifically explains that the conspiracy is alleged to have lasted until about June 15, 2023, when charges against Plaintiff were eventually dismissed.  As such the Complaint apparently gives Defendants fair notice of its claim and factual allegations that – when accepted as true- that the alleged conspiracy continued until about June 15, 2023.  [sic]  As such, the statute of limitations does not bar such claims.

The Complaint was timely filed against all Defendants since it was filed prior to the expiration of two years after the alleged conspiracy ended.  The statute of limitation will not expire on these claims until June 15, 2025.

(Doc. 13, p. 6) (emphasis in original).  Defendants respond that Cody has "all but admitted that his Complaint was filed after the applicable statute of limitations for alleged excessive use of force and that *only* his conspiracy claim is not *potentially* time barred[.]"  (Doc. 14, p. 3) (emphasis in original).

The court agrees that Cody has conceded the statute of limitations argument regarding the negligent operation of a motor vehicle against the City of Harrisburg and unreasonable and excessive force against Defendants Marte, McKenna, Snyder, and Braughler because Cody only makes arguments regarding the statute of limitations with respect to the conspiracy claim.  As noted by both parties, the statute of limitations for a § 1983 claim is two years.  *Brougher v. Univ. of Pittsburgh*, 882 F.2d 74, 79 (3d Cir. 1989).  Additionally, the statute of limitations applicable to Plaintiff's state law negligence, assault, and battery claims is also two years.  42 PA. CON. STAT. ANN. § 5524.  The statute of limitations begins to run "as soon as the right to institute and maintain suit arises."  *Haugh v. Allstate Ins. Co.*, 322 F.3d 227, 231 (3d Cir. 2003).  Thus, the statute of limitations for the § 1983 claim and state law claims began running on February 6, 2022, the date of the incident, and expired on February 6, 2024.  Defendants Marte, McKenna, Snyder, Braughler, and City of Harrisburg were not named in a complaint until May 6, 2024.  Thus, the state law and § 1983 unreasonable and excessive force claim

against Defendants Marte, McKenna, Snyder, Braughler, and City of Harrisburg will be dismissed with prejudice.

Regarding the conspiracy claim, Cody appears to argue that the statute of limitations did not begin to run on this claim until the final overt act of the conspiracy. Cody does not cite any law for this proposition. For a conspiracy claim under § 1985, the statute of limitations "runs from the date of each overt act causing damage to Plaintiff." *Bougher*, 882 F.2d at 80. Thus, Cody's argument that the statute of limitations did not begin to run until June 25, 2023, the date his charges were dismissed, is incorrect because the charges being dismissed did not cause him any injury.[5] Here, the final overt act alleged which could have caused Cody any damage was the filing of criminal charges against him. However, there is no date connected to the filing of criminal charges, although this information is likely within Cody's knowledge. Without this date, the court cannot find from the face of the complaint when the statute of limitations for the conspiracy claim accrued, and thus, when it expired. Therefore, on the record currently before the

---

[5] The court notes that a public records search of Cody's criminal docket reveals that the charges against him were not dismissed, but rather that Cody plead *nolo contendere* to the summary offense with which he was charged. The Dauphin County Court of Common Pleas sentenced him to a sentence of "no further penalty." A *nolo* plea is different than the charges being dismissed. The court also takes note that Attorney Laguna is listed as Cody's counsel of record in the criminal proceeding. This information is notable given that Attorney Laguna has accused Defendants' counsel of violating their duty of candor toward the tribunal in this case. By making a "duty of candor to the court" argument after failing to advise the court that his client entered a *nolo* plea in the underlying criminal case, it appears that Attorney Laguna is in the proverbial glass house.

court, the court will not dismiss the conspiracy claim on statute of limitations grounds.

In conclusion, the motion to dismiss based on the statute of limitations is granted as to Count 1 against City of Harrisburg, and Counts 2, 4, and 5 against Defendants Marte, McKenna, Snyder, and Braughler. These counts will be dismissed with prejudice as to these Defendants because amendment would be futile. *Jablonski v. Pan American World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988).

### B.    Qualified Immunity

Defendants' argument in support of their entitlement to qualified immunity is as follows:

> There is no doubt that Defendants, except for the City, are government officials that were performing discretionary functions as police officers. *See generally* [Doc. 1-3.] As to Officer Howell, it is not sufficiently clear that every reasonable official would not have arrested an individual for striking the police car they were driving. Indeed, Plaintiff avers that Defendant Officers "piled-on the Plaintiff with great physical force and **controlled violence**." [Doc. 1-3, ¶ 19.] Plaintiff admits that the force used was *controlled*, or in other words, *reasonable*.

(Doc. 10, p. 8) (emphasis in original.) Plaintiff's opposition argument goes as follows. First, Plaintiff argues that his complaint "avers intentional violations of so called 'bright lines' being crossed by the officer who's [sic] motive for doing so was essentially to stop the Plaintiff from continuing with his complaint about the officer having driven recklessly and hitting him while he was in a pedestrian

crosswalk." (Doc. 13, ¶ 19.)  Second, Plaintiff presents arguments relating to the

definition of the phrase "controlled violence."  Plaintiff argues:

> "Controlled violence is a description which can be used to have the reader envision a person being deliberately shot in the face.  Whether shooting another in the face is 'reasonable' or not, is another issue entirely.  The Complaint obviously speaks for itself, and must be read as a whole with each paragraph that is incorporated along with the others.

(*Id.* ¶ 24.)  Plaintiff also contests Defendants' contention that he "admitted" that

the use of force against him was "reasonable" because:

> Nowhere in the Complaint does Plaintiff use the word reasonable to describe the assault, nor can that reasonably inferred. [sic]  "Controlled violence" is used in one paragraph of the Complaint to summarize other alleged facts which specifically alleged police intentional [sic] and deliberately 'proceeded to strike, knee and slam Plaintiff into a rock wall; then they inflicted great pain by forcing his hands/arms (which were already handcuffed behind his back) to be pushed far past the normal range of motion towards his head so that it caused excruciating pain…etc." [(Doc. 1-3, ¶ 20.)]  Officers prevented another officer from administering first aid when the Plaintiff begged for it.  [(*Id.* ¶ 23.)]  Defendants' averment that Plaintiff admits this conduct was 'reasonable' seems to have violated the duty of candor toward the tribunal with this averment.

(*Id.* ¶ 25.)

The doctrine of qualified immunity recognizes that despite their participation

in constitutionally impermissible conduct, government officials "may nevertheless

be shielded from liability for civil damages if their actions did not violate 'clearly

established statutory or constitutional rights of which a reasonable person would

have known.'"  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow*, 457 U.S. at 818).  The doctrine "protects all but the plainly incompetent or those who knowingly violate the law."  *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)).

Courts follow a two-pronged test to determine whether qualified immunity applies. *Pearson*, 555 U.S. at 232.  First, the court must determine whether the defendants violated the plaintiff's statutory or constitutional right.  *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).  Second, the court must determine whether the right at issue was clearly established at the time of the violation.  *Id.* (citing *Reichle*, 566 U.S. at 664).  The court may exercise its discretion in deciding "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson*, 555 U.S. at 236. Defendants asserting that they are entitled to qualified immunity have the burden to prove that the doctrine applies.  *Halsey v. Pfeiffer*, 750 F.3d 273, 288 (3d Cir. 2014).  Finally, because "the 'driving force' behind the creation of the qualified immunity doctrine was a desire to ensure that 'insubstantial claims' against

14

government officials [will] be resolved prior to discovery[,]" the Supreme court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson*, 555 U.S. at 231–32.

At this juncture, the court cannot determine whether qualified immunity applies because the parties' arguments are not helpful to the court in determining the legal issue before it–whether the officers violated Plaintiff's constitutional rights during the February 2022 encounter.  For example, "[t]o state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004).  In determining whether a seizure is unreasonable, a court must consider "whether under the totality of the circumstances, 'the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations." *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)) (internal quotations omitted).  In assessing whether a use of force is reasonable, courts may consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight." *Id.* at 776–77.  Further considerations include:

> the possibility that the persons subject to the police action are violent
> or dangerous, the duration of the action, whether the action takes place

in the context of effecting an arrest, the possibility that the suspect may
be armed, and the number of persons with whom the police officers
must contend at one time.

*Id.* at 777.   Neither party provides any discussion of whether the force used against

Plaintiff is reasonable in the Fourth Amendment context or any discussion of any

of the above factors.   The court will not engage in this analysis without meaningful

input from the parties to include references to case law and the specific facts of the

complaint.   Thus, the court will deny the motion to dismiss on qualified immunity

grounds without prejudice.

### C. Failure to State a Claim

Defendants challenge two of Cody's claims as failing to state a claim upon

which relief can be granted.   The court will address each claim.

### 1. Negligent Operation of a Motor Vehicle

Defendants argue that Cody has failed to state a claim for negligent

operation of a motor vehicle "because any injury that occurred as a result of

Officer Howell's operation of the police car occurred when *Plaintiff* struck the

police car."  (Doc. 10, p. 8) (emphasis in original).   Further, Defendants argue "[i]t

is not plausible, accepting all of Plaintiff's allegations as true, that Defendant

Howell's operation of the motor vehicle caused any injury to Plaintiff."  (*Id.* at 9.)

Defendants end by noting that "Plaintiff alleges both that Plaintiff 'struck' the

police care, and that Defendant Howell was lying when he stated Plaintiff hit his police car with something–which is it?" (*Id.*)

Cody responds that "Defendant apparently misrepresents the black and white text set forth of record in Plaintiff's Complaint. The Defendant seems to have violated the duty of candor toward the tribunal with this averment by toying with semantics which completely ignore the averments contained within the Complaint." (Doc. 13, p. 9.) Cody also notes that the answer to Defendants' question about whether Plaintiff "struck" the car is a question for the jury, and "the complaint has obviously given Defendants fair notice of its claim and factual allegations since the Defendants are already framing questions to argue why they are not responsible for the vehicle collision with a pedestrian who was lawfully crossing the street in a marked pedestrian crosswalk." (*Id.* at 10.) Defendants did not address this argument in reply.

To state a claim for negligence under Pennsylvania law, a plaintiff must allege (1) that the defendant owed a duty of care to the plaintiff, (2) that the defendant breached that duty, (3) that the defendant's breach proximately caused the plaintiff's injuries, and (4) that the plaintiff suffered actual loss or damage as a result of the defendant's actions. *Brewington ex rel. Brewington v. City of Philadelphia*, 199 A.3d 348, 355 (Pa. 2018).

The complaint fails to state a claim for negligent operation of a motor vehicle because Cody alleges that he struck the vehicle and does not allege any injury he suffered as a result of Defendant Howell's operation of the vehicle. Specifically, Cody alleges that Defendant Howell's operation of the police car caused Cody to strike the car; not that Defendant Howell struck him with the car and caused injury. (Doc. 1-3, ¶¶ 9, 10.) Further, Cody alleges that "Defendant Howell almost hit him in the pedestrian crosswalk[.]" (*Id.* ¶ 15.) These averments are insufficient to state a claim because they merely allege that Cody struck the vehicle, not that Defendant's actions were the direct or proximate cause of his injuries. Moreover, Cody does not articulate any injury resulting from striking Defendant Howell's vehicle other than a conclusory statement that he suffered an injury. (*Id.* ¶ 36.) Therefore, the motion to dismiss will be granted with leave to amend as to Count 1 because amendment is not futile. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007).

### 2. Section 1983 Conspiracy

Defendants argue that Cody has not stated a claim for conspiracy under § 1985 because Cody alleges only conclusory statements that Defendants formed a conspiracy or alliance. (Doc. 10, p. 9.) Cody responds that "Defendant apparently misrepresents the black and white text set forth of record in Plaintiff's complaint and seeks to have the Court improperly ignore the averments contained within the

Complaint." (Doc. 13, p. 10.)  In reply, Defendants further explain that "Plaintiff has not averred any overt act to further the conspiracy which would serve as a foundation for the claim, let alone one so late in time that his claim is not time barred." (Doc. 14, p. 4.)

Section 1985(3) provides a cause of action for a person "injured by a conspiracy formed 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.'" *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006).  To state a claim for conspiracy under § 1985(3), a plaintiff must allege:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Id.* (quoting *United Bhd. of Carpenters & Joiners v. Scott,* 463 U.S. 825, 828–29 (1983).)  When enacted, § 1985(3) "was not intended to provide a federal remedy for 'all tortious, conspiratorial interferences with the rights of others,' or to be a 'general federal tort law.'" *Id.* at 135 (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 101–02 (1971).)  "Thus, a plaintiff must allege both that the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious." *Id.*

Further, "[a]fter a plaintiff establishes that the object of the conspiracy was the deprivation of a federally protected right, 'the rule is clear that' the plaintiff 'must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action.'" *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 295 (3d Cir. 2018) (quoting *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 184-85 (3d. Cir. 2009).) To do so, a plaintiff "must demonstrate that 'the state actors named as defendants in the complaint somehow reached an understanding to deny [the plaintiff] his rights." *Id.* In doing so, a plaintiff must do more than allege conclusions because the court does not consider "any conclusory allegations that there was 'a corrupt conspiracy,' 'an agreement,' or 'an understanding in place[.]'" *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). A plaintiff may plead "circumstantial evidence" including that "the alleged conspirators 'did or said something . . . to create an understanding,' 'the approximate time when the agreement was made, the specific parties to the agreement[,] the period of the conspiracy or the object of the conspiracy.'" *Jutrowski*, 904 F.3d at 295 (quoting *Great W. Mining*, 615 F.3d at 178–79.) In the context of an alleged conspiracy between police officers, this "may manifest as 'conversations' between officers about the incident, 'allegedly distorted' stories that 'emerged,' an 'awareness of conflicting stories' and 'irregularities in the series of official investigations' into the incident." *Id.*

Although not argued by Defendants, Cody has failed to allege sufficient facts to state a claim for conspiracy to deprive him of constitutional rights because he has failed to allege a discriminatory motive.  Cody does not allege that the object of the conspiracy was motivated by discrimination against an identifiable class.  Cody alleges the object of the conspiracy was "stif[ling] Plaintiff's complaint about Defendant Howell's driving and conceal[ing] that he was a complainant since a police supervisor was en route to investigate the incident." (*Id.* ¶ 18).  Cody also alleges that the officers mocked him for his "perceived sexual orientation[.]"  (*Id.* ¶ 16.)  However, Cody does not allege that this is the reason why the officers began to conspire against him, but rather, explicitly alleges that the officers conspired against him to prevent him from lodging a complaint against them.  This is insufficient to state a claim under § 1985(3).

However, Cody has sufficiently pleaded the element of conspiracy or agreement. Cody states that after the officers began speaking with one another, Defendant Howell "began falsely claiming that Plaintiff had deliberately hit his police car with something[.]"  (*Id.* ¶ 14.)  He also alleges that his arrest was ordered and agreed to by the officers.  (*Id.* ¶ 18.)

Additionally, Cody has alleged some overt acts, such as the actions taken by the officers on February 6, 2022.  (*Id.* ¶ 19.)  However, the complaint does not allege any specific facts extending the conspiracy beyond the incident on February

6, 2022, other than the filing of charges against him.  (*Id.* ¶ 28.)  Accordingly, the motion to dismiss will be granted with leave to amend as to Count 3.  *See Fletcher-Harlee Corp.*, 482 F.3d at 251.

## CONCLUSION

For the reasons above, the motion to dismiss will be granted in part and denied in part.  An order follows.


s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania